J-S23032-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEVIN RYAK | : | |
| | : | |
| Appellant | : | No. 2956 EDA 2025 |

Appeal from the PCRA Order Entered October 30, 2025
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0910761-2003

BEFORE: LAZARUS, P.J., MURRAY, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED AUGUST 13, 2026**

Appellant, Devin Ryak, appeals from the order of the Court of Common Pleas of Philadelphia County, dismissing as untimely his fourth petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. Because we agree with the PCRA court that Appellant failed to plead and prove the applicability of any exception to the PCRA's time-bar, we affirm the PCRA court's order.

On direct review, we adopted the following factual summary for this case that was presented by the trial court:

On the night of July 25, 2003, Hakim Williams (hereinafter "Hakim"), Letitia Parker (hereinafter ["]Letitia["]), Reniece James (hereinafter "Reniece") and Tyree Boyd (hereinafter "Tyree") were standing on the corner of Wingohocking and Colorado Streets, in Philadelphia, [Pennsylvania]. Some time after midnight on July 26, [Appellant] and "Romy" (later identified as Jerome Adams),

---

[*] Retired Senior Judge assigned to the Superior Court.

walked past the corner of Wingohocking and Colorado on the south side of Wingohocking Street heading east toward Broad Street. At approximately 12:59 a.m., [Appellant] and Romy walked back toward the corner of Wingohocking and Colorado Streets[,] this time on the north side of Wingohocking Street where Hakim and his friends were standing.

Letitia testified that [Appellant] and Romy passed by and an argument ensued. Tyree testified that Hakim asked [Appellant,] "[W]hat are you looking at?" Letitia testified that [Appellant] told Hakim, "I told you I wouldn't fight you no more." [Appellant] handed a food container which he was holding to Romy and then pulled a gun from his back pocket. Romy took the gun from [Appellant] and said [Appellant] and Hakim "might as well fight like grown men." Letitia testified that Hakim and Romy exchanged a few words and then Romy handed the gun back to [Appellant] and told him to "[d]o what you got to do." [Appellant] pointed the gun at Hakim and started shooting. Tyree and Hakim both turned to run away from [Appellant]. Tyree ran past two or three houses before he stopped and turned around. Reniece testified that Hakim got approximately 6 to 7 feet from [Appellant] before he fell to the ground. Reniece, Letitia, and Tyree testified that [Appellant] stood over Hakim and shot him multiple times. Then[, Appellant] ran west[,] down Wingohocking Street towards 18th Street.

At approximately 1:00 a.m., Sergeant [Joseph] Ros[s]a was driving east bound past the 1700 block of Wingohocking Street when he heard several shots. He also observed a lone black male in a white T-shirt jog west down Wingohocking Street and turn [onto Bouvier] Street[,] heading north. On the corner where a crowd had gathered, Sergeant Ros[s]a saw Hakim on the ground bleeding from his head and body. Sergeant Ros[s]a[, via] police radio[,] request[ed] an ambulance. He also asked the crowd if anyone had any information about the shooting. Someone from the crowd said that the shooter "went up Bouvier Street[."] Sergeant Ros[s]a radioed a description of the lone male he observed to the police dispatcher.

Shortly thereafter, Officer [Brian] Lorenzo and his partner responded to a radio call of a shooting at 1717 Wingohocking Street. They were driving west on Courtland Street when flash information came over police radio[,] describing a []black male with a dark complexion and wearing a white T-shirt[,] who was

- 2 -

last seen heading north on [Bouvier] Street. Just as Officer Lorenzo received the flash information, he saw [Appellant] walking briskly through the intersection of [Bouvier] Street and Courtland Street into Stenton Park. [Appellant] matched the flash description and was the only individual coming from [Bouvier] Street. Officer Lorenzo exited the car to follow [Appellant] through the park on foot while his partner drove to the north side of the park. Officer Lorenzo's partner stopped [Appellant] in the vicinity of 1600 Wyoming Avenue. No gun was recovered from [Appellant]. However, [Appellant] was wanted on an outstanding warrant for another crime. He was arrested and transported to the Homicide Division.

Hakim was transported by ambulance to Einstein Hospital and was pronounced dead at 1:30 a.m. Deputy Medical Examiner D[octor] Ian Hood testified that Hakim died of multiple [gunshot] wounds. Bullets fired into Hakim's body struck his head, lungs, spleen, liver, stomach, iliac artery, and intestines. At least three of the eight wounds would have been fatal. D[octor] Hood also testified that several of [the] wounds suggested that Hakim had been laying against a hard surface when he was shot. Officer [Robert] Stott of the Firearms Identification Unit confirmed that four bullets recovered from Hakim's body were .9 mm Marakov bullets. All four bullets were fired from the same gun. All seven of the recovered cartridge casings recovered from the crime scene were .9 mm Marakov cartridges.

At approximately 5:00 a.m., Officer [Joseph] Stallb[a]um drove Letitia and Reniece to the Homicide Division to be interviewed. Officer Stallb[a]um testified that Letitia and Reniece "said they saw the guys arguing. Then[,] shots rang out and they [saw] the shooter run west on Wingohocking." While waiting to be interviewed[,] Letitia and Reniece saw [Appellant], accompanied by a police officer, walk by. Tyree picked [Appellant's] photo out of a photo[graphic] array. Letitia returned to the police station on July 27 and identified [Appellant] as the shooter from a photo[graphic] array. At the preliminary hearing and at trial, Letitia and Tyree identified [Appellant] as the person who shot Hakim. At trial, Reniece also identified [Appellant] as the person who shot Hakim. For approximately two months before the shooting[,] Letitia saw [Appellant] several times "around the neighborhood." Reniece saw [Appellant] with Romy on [four to five] occasions around the neighborhood before the shooting. Tyree also saw [Appellant] "a couple" times over a three[-]month

period prior to the shooting. Letitia and Reniece further testified that they believed [Appellant] was Romy's cousin.

Karen Reddy (hereinafter "Karen") saw [Appellant] and Hakim fighting in the street on July 24; she broke the fight up. Karen spoke with Romy and [Appellant] after the fight and [Appellant] stated that the fight between him and Hakim "was over." Karen asked Romy who [Appellant] was and Romy responded that [Appellant] was "his cousin." Karen did not see the shooting on July 26.

*Commonwealth v. Ryak*, 2458 EDA 2006, *1-3 (Pa. Super., filed Oct. 23, 2007) (unpublished memorandum) (quoting Trial Court Opinion, 11/8/06, 2-5).

Appellant proceeded to a jury trial held on February 9-21, 2006. The jury found Appellant guilty of first-degree murder, criminal conspiracy, and possessing an instrument of crime.[1] On March 29, 2006, the trial court sentenced Appellant to life imprisonment on the first-degree murder conviction, a consecutive term of ten to twenty years' imprisonment on the conspiracy conviction, and no further penalty on the possessing an instrument of crime conviction. Appellant appealed, challenging the sufficiency and weight of the evidence, the admission of testimony about the July 24th fight, the denial of a defense continuance request made after the Commonwealth discovered the witness to the July 24th fight on the eve of trial, and the admission of the testimony identifying Appellant as the cousin of his conspirator, Jerome Adams. *See Ryak*, 2458 EDA 2006, at *4-8. We affirmed the judgment of sentence on October 23, 2007, and, on March 26,

_____

[1] 18 Pa.C.S. §§ 2502, 903, and 907, respectively.

2008, our Supreme Court denied Appellant's subsequent petition for allowance of appeal. *See Commonwealth v. Ryak*, 943 A.2d 321 (Pa. Super. 2007) (table) (2458 EDA 2006), *petition for allowance of appeal denied*, 945 A.2d 169 (Pa. 2008) (table) (653 EAL 2007).

On May 8, 2008, Appellant filed a *pro se* first PCRA petition. Counsel was appointed and filed an amended PCRA petition, incorporating the allegations in the *pro se* petition. Appellant supplemented the counseled amended petition with another amended petition filed on May 20, 2010. After the Commonwealth filed a motion to dismiss the petition, private counsel entered their appearance on Appellant's behalf and filed a third amended petition. Following the filing of a second motion to dismiss by the Commonwealth and a response filed by Appellant, the PCRA court issued notice of its intent to dismiss the petition pursuant to Pennsylvania Rule of Criminal Procedure 907 and, on April 16, 2012, dismissed the petition. Among the claims included in his petition, Appellant alleged that he had newly-discovered evidence that: (1) "Nael Reddy would testify that person known as 'Black' fought with the victim the day before his death and that the victim was shot as a direct result of a fight between the victim and 'Black'"; (2) "Rashena Carter witnessed the shooting incident and, according to her affidavit, she was confident that the shooter was not" Appellant; and (3) "Desjanava Kinslow also witnessed the shooting incident, and that she saw someone who was not [Appellant] shoot the victim." *Commonwealth v.*

*Ryak*, 2015 WL 6663277, *1 (Pa. Super., filed Oct. 30, 2015) (unpublished memorandum) (1222 EDA 2014).

On March 19, 2013, we affirmed the dismissal of the first PCRA petition. *See Commonwealth v. Ryak*, 69 A.3d 1296 (Pa. Super. 2013) (table) (1308 EDA 2012). As for the after-discovered evidence claim, we concluded that Appellant did not exercise reasonable diligence in discovering his new witnesses, his explanation that the witnesses "did not want to get involved, were scared, or feared retaliation" was an insufficient reason to excuse his lack of reasonable diligence, and the testimony offered by Appellant "would have only [offered] limited impeachment value." *Commonwealth v. Ryak*, 2013 WL 11276252, *2 (Pa. Super., filed Mar. 19, 2013) (unpublished memorandum) (1308 EDA 2012). On February 24, 2016, our Supreme Court denied Appellant's subsequent petition for allowance of appeal. *See Commonwealth v. Ryak*, 132 A.3d 458 (Pa. 2016) (table) (656 EAL 2015).

On April 12, 2013, Appellant filed a counseled second PCRA petition. He again advanced an after-discovered evidence claim, and attached affidavits from two witnesses, Brian Rivers and Rakiem Smith.

> In Rivers' affidavit, dated March 24, 2013, he state[d] that he saw "Black" shooting at the victim, and [Appellant] was not the shooter. In Smith's affidavit, dated March 22, 2013, Smith states that he knew the victim and [Appellant] prior to the victim's murder, and that he introduced [Appellant] and Rivers while the three men were together in prison. According to Smith, he told Rivers that [Appellant] was charged with the shooting of the victim and pointed [Appellant] out to Rivers. Rivers told him [Appellant] was not the shooter because he (Rivers) had witnessed the

shooting. Smith then told [Appellant] about Rivers, and [Appellant] asked to meet Rivers.

*Ryak*, 2015 WL 6663277, at *1. On March 17, 2014, the PCRA court presided over an evidentiary hearing at which it concluded that the witnesses' testimony lacked credibility and dismissed the second PCRA petition. *See id.* at *2. On October 30, 2015, we affirmed the dismissal of the petition, finding the petition was untimely filed, Appellant failed to demonstrate the applicability of a statutory time-bar exception to permit review of his after-discovered evidence claim, and the record supported the PCRA court's denial of the after-discovered evidence claim. *See id.* at *3-5; *Commonwealth v. Ryak*, 134 A.3d 109 (Pa. Super. 2015) (table) (1222 EDA 2014). On February 24, 2016, our Supreme Court denied a subsequent petition for allowance of appeal. *See Commonwealth v. Ryak*, 132 A.3d 458 (Pa. 2016) (table) (656 EAL 2015).

On January 4, 2017, Appellant filed a *pro se* third PCRA petition that he styled as a petition for writ of *habeas corpus*. *See Commonwealth v. Ryak*, 2018 WL 3582667, *1 (Pa. Super., filed July 26, 2018) (unpublished memorandum) (2436 EDA 2017). In the petition, Appellant challenged the legality of his life imprisonment sentence. *See id.* at *2. After the PCRA court issued a Rule 907 notice, it dismissed the petition as an untimely PCRA petition on July 13, 2017. *See id.* at *1. On July 26, 2018, we affirmed the dismissal of the petition. *See Commonwealth v. Ryak*, 194 A.3d 713 (Pa. Super. 2018) (table) (2436 EDA 2017). Appellant did not seek further review in the Pennsylvania Supreme Court.

On May 23, 2023, Appellant filed a *pro se* fourth PCRA petition, which is the focus of this appeal. In the petition, he asserted after-discovered evidence of an alibi witness named Shakeeta Pendleton and alleged that the Commonwealth failed to disclose misconduct by a detective named David Baker. **See** *Pro Se* Fourth PCRA Petition, 5/23/23, 9-15. In support of the former claim, Appellant proffered an affidavit from Pendleton, dated December 30, 2022. **See id.**, Exhibit A, Pendleton Affidavit, 12/30/22. The affidavit alleged the following:

> Sometime in July 2003[,] I was at the park with my friend Anika on Bouvier St[reet] when this man (Devin) came walking up to me[.] We started flirting[.] We w[ere] talking for about 20-30 minutes when we heard shots[.] We all went [a] different way[.] Devin asked me if I needed him to walk me home[.] I told him no[.] He went th[rough] the park[.] I walked down Bouv[i]er St[reet.] A few time after I started walking[, a] man with a gun in head [*sic*] r[a]n pas[t] me[.] I turn[ed] to see what way he went and he was gone[.]
>
> A few years later[,] my friend told me that somebody name[d] Devin was trying to get in touch with me[.] I played like it wasn[']t me becau[s]e I did[n']t w[a]nt to be involve[d] with nothing[.] But a few weeks ago[,] I r[a]n across Devin[']s Facebook page and it was a message ask[ing] if anybody had any info[rmation] to ple[a]se inbox[,] so I did[,] and his wife mess[a]ged me back[.] She asked if she could have my number[.] I gave it to her[.] She called[.] I told her a litt[le] bit[.] She asked if I would come to court[.] I told her yes[.] This [is] why I'm here now.
>
> I had [no] idea that he was sitting in jail all this time for something he didn't do[.] We w[ere] talking and the man r[a]n pas[t] me with a gun in his hand[.]

**Id.** (section break added).

As for his due diligence in investigating Pendleton's usefulness as a defense witness, Appellant alleged that "[p]rior to trial, during trial, and after trial, [he] made attempts to locate [] Pendleton, to no avail." *Pro Se* Fourth PCRA Petition, 5/23/23, 6. He further asserted, "[t]hrough family and friends[, he] made attempts to locate [] Pendleton, to prove that he was blocks away when the [gunshots] that killed [] Williams were fired." **Id.** He alleged that, on an unidentified date, Pendleton messaged his wife "about the night of the Williams murder," and that, on December 30, 2022, an investigator interviewed Pendleton on his behalf. **Id.** at 6-7.

In support of the police misconduct claim, Appellant proffered a Philadelphia Police Department misconduct disclosure packet from the Philadelphia District Attorney's Office, with a filing date stamp of September 8, 2022. **See** *Pro Se* Fourth PCRA Petition, 5/23/23, Exhibit B, Police Misconduct Disclosure Packet. Included in the packet were documents reflecting that the District Attorney's Office requested information about a former officer, Detective David Baker, on May 18, 2019, and responsive documents indicated the conclusion of a police internal affairs division (IAD) investigation that, with respect to an unrelated case on April 2, 1998, Detective Baker improperly denied a person legal representation while that person was in custody and the subject of a homicide investigation.[2] **See id.**

_____

[2] With respect to the events of April 2, 1998, the IAD conclusion also indicated that the detective was "exonerate[d]" of any use of improper police procedure
*(Footnote Continued Next Page)*

Along with the police disclosure misconduct packet, Appellant proffered an opinion in an unrelated federal *habeas corpus* matter filed a by a man named Steven Lazar. ***See*** *Pro Se* Fourth PCRA Petition, 5/23/23, Exhibit B, Lazar Memorandum Opinion, 3/6/23; ***see also Lazar v. Attorney General***, 659 F.Supp. 3d 599 (E.D.Pa. 2023). The ***Lazar*** opinion referenced both a sustained allegation of misconduct by Detective Baker in 1998 to which the Commonwealth stipulated in 2021 in connection with the 2003 investigation and conviction of a man named Lavar Brown, and the Commonwealth's concession that Detective Baker used coercive interrogation tactics in his 1991 investigation of the case of a defendant named Chester Hollman where the Commonwealth later found DNA testing that "strongly suggested that Hollman was innocent, leading to his exoneration." ***Id.*** at 7-8.

In his PCRA petition, Appellant identified the "misconduct history" of Detective Baker that was addressed in the attachments to the petition and alleged that information was withheld from him in violation of ***Brady v. Maryland***, 373 U.S. 83 (1963). ***See*** *Pro Se* Fourth PCRA Petition, 5/23/23, 7-8. As for Detective Baker's role in the instant case, Appellant referred to him as "one of the [d]etectives involved in this investigation." ***Id.*** at 7. He asserted: "Had counsel been aware of [Detective] Baker's misconduct during trial[,] it could have been argued it was [Detective] Baker, or [d]etectives

_____

by refusing to accept a non-waiver of rights form from a person, and a separate allegation of abuse against the detective was "not sustained." ***See*** *Pro Se* Fourth PCRA Petition, 5/23/23, Exhibit B, Police Misconduct Disclosure Packet, "Conclusion."

under [Detective] Baker's direction, who escorted [Appellant] past the witnesses at police headquarters." *Id.* at 8. Appellant alleged that he "had no knowledge of Detective Baker's misconduct history until [the memorandum opinion] in the [] *Lazar* case became available in [his] prison['s] law library." *Id.* at 12 (unnecessary capitalization omitted; emphasis added).

On September 25, 2025, the PCRA court issued notice of its intent to dismiss Appellant's instant petition pursuant to Rule 907. The court concluded that Appellant's petition was untimely filed and failed to establish the applicability of a statutory time-bar exception in order to permit review of his substantive claims. *See* Rule 907 Notice, 9/25/25, 1-2.

The PCRA court determined that the statutory exception for newly-discovered facts did not apply to the Pendleton claim because the affidavit from Pendleton did not establish an alibi for Appellant or that someone other than Appellant killed Hakim Williams:

> At the outset, this [c]ourt finds that you have failed to substantiate the alleged fact that someone other than you committed the murder of Hakim Williams. Instantly, the only evidence offered in support of the alleged fact at issue is [] Pendleton's affidavit. However, [] Pendleton does not even appear to claim to have witnessed the shooting. Rather, [] Pendleton merely indicates that she was having a conversation with you on the date that the shooting occurred, that she heard gunshots at some point during this conversation, and that she saw an unidentified man holding a gun at some point after her purported conversation with you. The purported fact that [] Pendleton heard gun shots while speaking with you on the day that the murder occurred and later saw another unidentified individual with a gun, even if true, is not sufficient to prove that you were not responsible for the murder of Hakim Williams for purposes of the PCRA's newly[-]discovered fact exception. Thus,

- 11 -

this [c]ourt finds that you have failed to establish a time[-]bar exception on the basis of this claim.

Rule 907 Notice, 9/25/25, 1. Moreover, the PCRA court concluded that Appellant's time-bar exception claim based on the Pendleton affidavit failed because, assuming the facts were as Appellant alleged, Pendleton's supposed usefulness as a witness would have been a fact known to Appellant for more than two decades before the filing of the instant petition. *Id.* ("it is unclear how the purported fact that you did not participate in a shooting that took place in 2003, if true, could have been previously unknown to you when you filed the instant petition [in] 2023.").

The PCRA court also determined that Appellant failed to demonstrate the applicability of the newly-discovered fact and governmental interference time-bar exceptions for his claim about Detective Baker because he failed to identify a nexus between Detective Baker's supposed misconduct in unrelated cases with the investigation of his own criminal matter:

> This [c]ourt finds that you have failed to substantiate the alleged fact that your prosecutor withheld evidence of Detective Baker's prior misconduct from the defense in your case. Instantly, the only evidence offered in support of the alleged fact at issue [is] a judicial opinion and disclosure documents indicating that Detective Baker was found to have engaged in misconduct in other cases that have no discernable relationship with your case. Indeed, you openly admit that the cases where Detective Baker was found to have engaged in misconduct have no relation [to t]his case. The purported fact that the officer in question was found to have engaged in police misconduct in separate unrelated cases, even if true, is not, in and of itself, sufficient to establish the alleged fact that your prosecutor possessed evidence of this prior misconduct at the time of your trial and withheld such evidence from the defense in violation of *Brady*. You have failed to provide any evidence, or point to anything in the record,

indicating that your prosecutor possessed evidence of Detective Baker's prior misconduct at the time of your trial, let alone that they withheld such evidence from your defense in your case. Thus, this court finds that you have failed to substantiate the alleged fact at issue and your failure to do so is fatal to your time[-]bar claim.

Rule 907 Notice, 9/25/25, 2.

On October 9, 2025, Appellant filed *pro se* objections to the PCRA court's Rule 907 notice. With respect to the Pendleton claim, Appellant asserted that Pendleton should have been "considered unavailable for purpose[s] of after-discovered evidence" where she had been "avoiding contact with [him] and [previously] did not want to get involved." *Pro Se* Objection to Rule 907 Notice, 10/9/25, 1. He also argued that Pendleton's affidavit was sufficient to undermine confidence in the verdict in his case because "[t]here [wa]s nothing in the record of this matter to suggest that there was another shooting in the area at the time Williams was murdered." *Id.* at 2. As for the claim about Detective Baker, Appellant referred to identifying witness Reniece James and noted – without reference to the trial record – "it was Detective Baker who was involved in this unconstitutional identification." *Id.* at 3. He also referred the PCRA court to an unpublished memorandum opinion of this Court, addressing a police misconduct claim, and asserted: "Detective Baker's history of misconduct would have buttressed counsel's argument pre-trial and at trial that the identification was the result of police tactics." *Id.*

The PCRA court dismissed Appellant's fourth PCRA petition on October 30, 2025. *See* Order (dismissal of fourth PCRA petition), 10/30/25, 1. Appellant timely filed a notice of appeal. *See* Notice of Appeal, 11/13/25, 1.

The PCRA court did not order Appellant to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). The court nevertheless prepared an opinion for our review. *See* PCRA Court Opinion, 11/13/25, 1-3.

Appellant presents the following questions for our review:

I. Whether the PCRA [c]ourt[']s determination that [A]ppellant failed to plead and prove the newly[-]discovered facts exception was an error of law?

II. Whether the PCRA court erred in fact and law in determining [A]ppellant failed to demonstrate his case was impacted by Detective David Baker[']s history of misconduct and the Commonwealth failed to disclose it?

Appellant's Brief, 4 (suggested answers omitted).

"We review the denial of a PCRA petition to determine whether the record supports the PCRA court's findings and whether its order is free of legal error." *Commonwealth v. Kelsey*, 206 A.3d 1135, 1139 (Pa. Super. 2019).

Before we can review the issues raised on appeal, we must determine whether Appellant's petition satisfied our jurisdictional requirements. *See Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa. Super. 2014) ("we must first consider the timeliness of Appellant's PCRA petition because it implicates the jurisdiction of this Court and the PCRA court"). "Our law is clear that the PCRA's time restrictions are jurisdictional in nature, and '[i]f a PCRA petition is untimely, neither this Court nor the trial court has jurisdiction over the petition. Without jurisdiction, we simply do not have the legal authority to address the substantive claims.'" *Commonwealth v. Anderson*, 234 A.3d

- 14 -

735, 737 (Pa. Super. 2020) (brackets in original), *quoting Commonwealth v. Albrecht*, 994 A.2d 1091, 1093 (Pa. 2010) (citation omitted).

All PCRA petitions, "including a second or subsequent petition, shall be filed within one year of the date the judgement [of sentence] becomes final," unless an exception to timeliness applies. 42 Pa.C.S. § 9545(b)(1). Here, Appellant timely appealed his judgment of sentence and, following our affirmance, our Supreme Court denied his subsequent, timely-filed petition for allowance of appeal on March 26, 2008. Appellant's judgment of sentence thereafter became final on June 24, 2008, when his time for filing a petition for writ of *certiorari* with the United States Supreme Court expired. *See* 42 Pa.C.S. § 9545(b)(3) ("For purposes of [the PCRA], a judgment [of sentence] becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review"); U.S.Sup.Ct.R. 13(1) (setting a 90-day deadline for filing a petition for writ of *certiorari*). Appellant thus had until June 24, 2009, to file a timely PCRA petition. *See* 42 Pa.C.S. § 9545(b)(1). He did not file the instant petition until May 23, 2023. Appellant's fourth PCRA petition was patently untimely.

To obtain review of his untimely PCRA petition, Appellant was required to plead and prove the applicability of at least one of the three statutory exceptions that are found at 42 Pa.C.S. § 9545(b)(1)(i)-(iii), for each of his substantive claims. Moreover, pursuant to 42 Pa.C.S. § 9545(b)(2), he needed to file his petition within one year of the date any claims for application

- 15 -

of the statutory time-bar exceptions "could have been presented." *Id.* at §

9545(b)(2).

Appellant argued that both of his claims were reviewable under the

newly-discovered fact time-bar exception at 42 Pa.C.S. § 9545(b)(1)(ii), and

the claim concerning misconduct by Detective Baker was additionally

reviewable under the governmental interference exception at 42 Pa.C.S. §

9545(b)(1)(i). These exceptions apply where a PCRA petition proves that:

> (i) the failure to raise the claim previously was the result of
> interference by government officials with the presentation of the
> claim in violation of the Constitution or laws of this Commonwealth
> or the Constitution or laws of the United States; [or]
>
> (ii) the facts upon which the claim is predicated were unknown to
> the petitioner and could not have been ascertained by the exercise
> of due diligence[.]

42 Pa.C.S. § 9545(b)(1)(i)-(ii).

As for the newly-discovered fact exception, we have noted:

> A PCRA court first must determine whether the facts upon which
> the claim is predicated were unknown to the petitioner. If the
> PCRA court concludes that the facts were unknown, then the PCRA
> court must next examine whether the facts could have been
> ascertained by the exercise of due diligence, including an
> assessment of the petitioner's access to public records. Due
> diligence demands that the petitioner take reasonable steps to
> protect his own interests. … The newly-discovered fact exception
> does not require any merits analysis of the underlying claim, and
> application of the time-bar exception therefore does not
> necessitate proof of the elements of a claim of after-discovered
> evidence.

*Commonwealth v. Williams*, 324 A.3d 569, 576 (Pa. Super. 2024)

(citations, brackets, and internal quotation marks omitted). With respect to

the governmental interference exception, the petitioner "is required to show that but for the interference of a government actor, he could have filed his claim earlier." *Commonwealth v. Staton*, 184 A.3d 949, 955 (Pa. 2018) (citation and internal quotation marks omitted).

Appellant claims that that PCRA court erred by denying him substantive review of his after-discovered evidence claim concerning the Pendleton affidavit. *See* Appellant's Brief, 15-19. He argues that the Pendleton affidavit itself was a newly-discovered fact for time-bar purposes. *See id.* at 15 ("The new fact at issue here is the affidavit of Ms. Pendleton."). He asserts that the court erred by rejecting his claim based on the affidavit "without a hearing [by] concluding [that he] failed to exercise diligence to locate Ms. Pendleton, and Ms. Pendleton was not credible because there was evidence stating [that] the shooting she heard was the shooting and murder of Mr. Williams." *Id.* As for his due diligence in raising his claim based on the affidavit, he notes that he "attempted to locate Ms. Pendleton prior to trial, during trial, and after trial to no avail," but that she did not share her account leading to the signing of her affidavit, until after she responded to a Facebook page created by his family. *Id.* at 16. He suggests that it was the burden of the Commonwealth or the court to distinguish whether Ms. Pendleton was referring to a shooting other than the one involving the victim before he was denied a hearing on his claim. *See id.* at 18 ("neither the Commonwealth [n]or the [c]ourt has identified evidence of another shooting that Ms. Pendleton may have heard other than the shooting of Mr. Williams").

Contrary to Appellant's arguments, we do not discern any error with the PCRA court's rejection of his claim for a time-bar exception based on the Pendleton affidavit. The affidavit from Pendleton contained two "facts" for consideration: (1) that "[s]ometime in July 2003," Pendleton was with a friend named Anika when Appellant approached her on Bouvier Street and she was speaking with Appellant thereafter when they heard gunshots; and (2) after Appellant subsequently walked away from her and went into a nearby park, Pendleton saw a man run past her with a gun. *Pro Se* Fourth PCRA Petition, 5/23/23, Exhibit A, Pendleton Affidavit, 12/30/22. "[W]hile we need not find a 'direct connection' between the newly-discovered facts and the claims asserted by a petitioner, the statutory language requires there be some relationship between the two." ***Commonwealth v. Shannon***, 184 A.3d 1010, 1017 (Pa. Super. 2018).

Here, Appellant clearly wanted to rely on the Pendleton affidavit to establish an alibi for him at the time of the shooting of Williams for the purposes of a substantive after-discovered evidence claim, however, the information included in the affidavit did not establish an adequate connection between the facts included in the affidavit and the after-discovered evidence claim that he wished to present. Pendleton's assertion that her interaction with Appellant happened "sometime in July 2003" was so open ended as to have failed to demonstrate a connection between the newly-discovered facts alleged and the homicide in question or substantive claim asserted. When faced with this inadequate pleading for a proposed alibi, it was not the burden

- 18 -

of the Commonwealth or the PCRA court to narrow down whether or not Pendleton's affidavit was referring to the shooting resulting in the murder at issue or another incident of gunfire altogether. It was Appellant who had the burden of proving the applicability of one of the timeliness exceptions for his substantive after-discovered evidence claim. **See Commonwealth v. Pursell**, 749 A.2d 911, 914 (Pa. 2000) (where a PCRA petition is untimely filed a PCRA court has "no jurisdiction to grant [a petitioner] relief unless he can plead and prove that one of the exceptions to the time bar provided in 42 Pa.C.S. § 9545(b)(1)(i)-(iii) applies"); 42 Pa.C.S. § 9545(b)(1) (requiring that the PCRA "petition allege[] and the petitioner prove[]" the applicability of a timeliness exception for a substantive claim raised in an untimely PCRA petition).

In addition, the facts contained in the proffered affidavit – Pendleton's supposed usefulness to substantiate an alibi for Appellant – would have been known by Appellant since the night of the murder. Where the police pursuit of Appellant occurred within 45 seconds of the initial police radio call of the shooting, **see** N.T. Trial, 2/14/26, 11-12, Appellant would have previously known, far more than a year before the filing of his instant PCRA petition, whether he was with Pendleton at the time of the shooting and just before his arrest. In that sense, Pendleton would have only been a new source of a fact that Appellant had already known. "The focus of the [section 9545(b)(1)(ii)] exception is on [the] newly discovered facts, not on a newly discovered or newly willing source for previously known facts." **Commonwealth v.**

*Marshall*, 947 A.2d 714, 720 (Pa. 2008) (citation and internal quotation marks omitted).   Accordingly, Appellant could not rely on the Pendleton affidavit to establish the applicability of the newly-discovered fact exception to the PCRA's time-bar.[3]

With respect to the Appellant's second claim, he argues that his ***Brady*** claim concerning the Commonwealth's failure to disclose misconduct records of Detective Baker satisfied both the newly-discovered fact and governmental interference time-bar exceptions.  ***See*** Appellant's Brief, 19-22.  In particular,

_____

[3] As an aside, Appellant's version of the events in support of this time-bar claim makes little sense given how his prior direct and collateral review progressed.  If he had a possible alibi through Pendleton, it would have been reasonable for him to have relayed that information to his former counsel.  Assuming that he had attempted to locate Pendleton before the time of trial, as he now alleges, ***see*** Appellant's Brief, 16, it also would have been reasonable for him to task his counsel with the search for that elusive alibi witness, and he possibly would have requested the trial court's assistance to secure Pendleton's presence at trial through the use of a subpoena.  In turn, even if he had failed to locate Pendleton earlier, as he now alleges, one could presume that he would have alleged in his timely first PCRA petition that trial counsel was ineffective for not locating Pendleton for the purpose of presenting her an alibi witness.  None of that appears to have occurred.

"Due diligence demands the petitioner to take reasonable steps to protect h[is] interests." ***Commonwealth v. Shiloh***, 170 A.3d 553, 558 (Pa. Super. 2017).  The due diligence requirement for the section 9545(b)(1)(ii) time-bar exception "requires reasonable efforts by a petitioner, based on the particular circumstances, to uncover facts that may support a claim for collateral relief." ***Id.*** (citation omitted).  In the particular circumstances presented, we also conclude Appellant's general averments to relying on efforts by family and friends to locate Pendleton, ***see*** Appellant's Brief at 16, did not satisfy his pleading burden for the due diligence requirement. ***See Commonwealth v. Smith***, 194 A.3d 126, 135 (Pa. Super. 2018) (holding that defendant did not satisfy due diligence requirement by offering no reasonable explanation for a 16-year delay in obtaining new evidence).

Appellant asserts that he wanted to pursue review of a substantive after-discovered evidence claim based on the reports of alleged prior misconduct by Detective Baker to bolster assertions that the detective played a role in making sure that the eyewitnesses had a chance to view him in the police homicide unit or otherwise coerced the witnesses to cooperate with the investigation. *See* Appellant's Brief, 20 ("It is believed and averred that it was Detective Baker who escorted Appellant past the witnesses and failed to document the error in doing so."); *id.* at 21 ("this evidence would have buttressed the argument at trial that James was coerced to cooperate."); *id.* ("evidence of Detective Baker's misconduct history would [have] buttresse[d] counsel's challenge to improper methods used to identify [him] at police headquarters.").

The PCRA court's reasoning for denying this claim is two-fold. First, the court determined that the documents Appellant proffered in support of his claim did not independently demonstrate any action on the part of the Commonwealth to interfere with the presentation of a claim for relief:

> This [c]ourt has failed to substantiate the alleged fact that his prosecutor withheld evidence of Detective Baker's prior misconduct from the defense in his case. Instantly, the only evidence offered in support of the alleged fact at issue [is] a judicial opinion and disclosure documents indicating that Detective Baker was found to have engaged in misconduct in other cases that no discernable relationship with [Appellant's] case. Indeed, [Appellant] openly admits that the cases where Detective Baker was found to have engaged in misconduct have no relation [to] his case.

PCRA Court Opinion, 11/13/25, 3-4. Second, the PCRA court concluded that Appellant could not prove the applicability of the newly-discovered fact exception because he failed to demonstrate any connection between the alleged misconduct by this detective and the circumstances of his case:

> The purported fact that the officer in question was found to have engaged in police misconduct in separate unrelated cases, even if true, is not, in and of itself, sufficient to establish the alleged fact that [Appellant's] prosecutor possessed evidence of this prior misconduct at the time of [Appellant's] trial and withheld such evidence from the defense in violation of *Brady*. [Appellant] has failed to provide any evidence, or point to anything in the record, indicating that his prosecutor possessed evidence of Detective Baker's prior misconduct at the time of [Appellant's] trial, let alone that they withheld such evidence from the defense in his case.

PCRA Court Opinion, 11/13/25, 3-4.

More importantly, Appellant failed to refer the PCRA court or this Court to any materials in the trial record, or proffer any supplemental documents, suggesting that Detective Baker had any material involvement in the investigation or prosecution in this case.

Appellant asserts in his brief that witness Reniece James "testified that Detective Baker told her [that] she had to come in for the interview, [*i.e.*,] 'she would come willing or by force.' … 16[-]year[-]old James followed Detective Baker's direction and came in for the interview." Appellant's Brief, 19, citing N.T. Trial, 2/13/06, 93; *see also* Appellant's Brief, 21 ("Reniece James testified that Detective Baker told her she had to talk to him and she would come in 'willingly or by force[.'] James was 16 years old at the time and taken in by Detective Baker without a parent guardian."). The section of

- 22 -

testimony he cites to in support of that assertion, however, reflects that witness James never referred to the identity of the officer who made the remark that Appellant now attributes to Detective Baker:

Q. And do you remember talking to police before you went to the hospital?

A. The police came and got us, so I had to talk to them.

Q. Because you said you were a witness, right?

A. No. Because -- somebody said I was a witness.

Q. Well, didn't the police officer ask you questions about what had just happened?

A. No. They came and got us and asked either we go willingly or will be forced.

Q. Do you remember the officer who took you was named Officer Stallbaum? S-t-a-l-l-b-a-u-m?

A. No.

N.T. Trial, 2/13/06, 93-94. Officer Joseph Stallbaum testified that he first saw witnesses James and Parker as they were talking to a police supervisor Sergeant McKinney, and, at the direction of Seargeant McKinney, he transported James and Parker to the Homicide Unit. *See* N.T. 2/14/06, 36. The testimony of James and Officer Stallbaum does not support Appellant's suggestion that Detective Baker pressured James to go to the Homicide Unit – or had any interaction with James at all.

Appellant also alleges that Detective Baker conducted an interview of James. *See* Appellant's Brief, 19 ("James was 16 years old at the time and

she testified neither her parents [n]or guardian were present during her interview with Detective David Baker."). Again, the record does not support Appellant's assertion. In her trial testimony, James acknowledged giving a statement to police that was marked and moved into the trial record as Exhibit C-11, *see* N.T. Trial, 2/13/06, 75-76, but she never identified the detectives involved with that interview and statement, and she was not asked to identify any officers involved in that interview. The top of her police statement identifies the interviewer as "W. Gross # 683." Trial Exhibit C-11, Reniece James Statement, 7/26/03, 1.

The Commonwealth informs us that its review of the record reveals that Detective Baker's involvement in the case is limited to "conducting a photo array to identify Romy, the person who handed [Appellant] the gun (Trial Exh. C-9) and interviewing[, one of the arresting officers,] Officer Lorenzo[,] after the shooting (Trial Exh. C-16)." Appellee's Brief, 12 (footnote omitted). In our view, that assessment is correct. *See* Trial Exhibit C-9, Statement of Letitia Parker, 7/27/03, 1 (question in statement posed by interviewer, "Det. McGuffin," asking, "Det. Baker has shown you a series of photos from a photo machine, who is the male that you identified?," to which Parker responded, "That is Rome…"); Trial Exhibit C-16, Statement of Officer Brian Loranzo, 7/26/03, 1 (notation identifying the interviewer as "Det. D Baker [#] 612"). Additionally, the record reflects that Detective Baker was not presented as a witness at trial and was not referenced in the trial notes of testimony.

Whether the disclosure notice about Detective Baker constituted admissible evidence for impeachment, whether its contents were admissible under an exception to Pennsylvania Rule of Evidence 404(b)'s general prohibition on the use of prior bad acts evidence, and whether it constituted **Brady** material are not relevant to our review because the PCRA court never reached the substantive merits of Appellant's **Brady** claim. Here, the PCRA court dismissed the petition for lack of jurisdiction because it found that Appellant did not plead and prove the applicability of the governmental interference and newly-discovered fact exceptions to the PCRA's time-bar for a substantive claim concerning the detective. Upon review, we are unable find any error with the PCRA court's review.

Appellant did not demonstrate in any way that the evidence against him in this case rested on the credibility of Detective Baker, or that prior misconduct by Detective Baker was probative of any other officers' credibility. Thus, Appellant failed to demonstrate the applicability of the newly-discovered fact exception because he utterly failed to demonstrate how "facts" demonstrated in the police misconduct disclosure packet for Detective Baker are related to his predicate substantive claims, either for an after-discovered evidence claim or a **Brady** claim concerning this detective. **See Shannon**, 184 A.3d at 1017; **see also Commonwealth v. Myers**, 303 A.3d 118, 122 (Pa. Super. 2023) (for purposes of the newly-discovered fact exception, "the 'fact' on which the petitioner predicates his claim to an exception to the time-bar must bear some logical connection to a plausible claim for relief") (citing

*Commonwealth v. Robinson*, 185 A.3d 1055, 1062 (Pa. Super. 2018) (*en banc*)).

Since Appellant failed to plead and prove the applicability of any exception to the PCRA's time-bar, we find that the PCRA court's dismissal of his petition is supported by the record. Moreover, we conclude that the PCRA court did not abuse its discretion in declining to hold an evidentiary hearing. *See Commonwealth v. Garcia*, 23 A.3d 1059, 1066 n.9 (Pa. Super. 2011) ("the right to an evidentiary hearing on a PCRA petition is not absolute, and the PCRA court may decline to hold a hearing if the petitioner's claims are patently frivolous with no support in either the record or other evidence").

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/13/2026